UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

THE VILLAGE APOTHECARY, INC.,

        Debtor.

_____/

Case No. 15-56003

Chapter 7

Judge Thomas J. Tucker

**OPINION ON REMAND, REGARDING THE FEE APPLICATION OF SILVERMAN & MORRIS PLLC, CHAPTER 7 TRUSTEE'S SPECIAL COUNSEL**

This case is before the Court on a remand from the United States District Court. The remand concerns the attorney fees to be awarded to the firm of Silverman & Morris PLLC ("Silverman & Morris"), for their work as special counsel for the Chapter 7 Trustee.

**A. Background**

    **1. The fee applications filed in this case**

After the Chapter 7 Trustee filed his final report in this bankruptcy case, the Court considered the fee applications filed by the Trustee, by Trustee's counsel, Ellmann & Ellmann P.C., and by Silverman & Morris. These three applicants filed applications seeking allowance of attorney fees and reimbursement of expenses in the following amounts:

- Douglas S. Ellmann, Chapter 7 Trustee: fees of $4,821.09; expenses of $49.96[1]

- Ellmann & Ellmann P.C., attorneys for the Trustee: fees of $2,100.00; expenses of $0.00[2]

---

[1] Docket # 44.

[2] Docket # 43.

- Silverman & Morris, special counsel for the Trustee: fees of $36,889.25; expenses of $174.74[3]

Because there was not enough money in the bankruptcy estate to actually pay these fee and expense amounts in full, the applicants later modified their requests, and ultimately sought fees and expenses in the following reduced amounts, as reflected in the Trustee's Final Report:[4]

- Douglas S. Ellmann, Chapter 7 Trustee: fees of $4,441.43; expenses of $46.03
- Ellmann & Ellmann P.C., attorneys for the Trustee: fees of $1,934.63; expenses of $0.00
- Silverman & Morris, special counsel for the Trustee: fees of $33,984.25; expenses of $160.98

Although no timely objections were filed, the Court concluded that it was necessary to hold a hearing on the fee applications. In its Order setting the hearing, the Court expressed its concern that the fees requested by the applicants appeared to be unreasonably high, because they would consume all of the assets of the bankruptcy estate, leaving nothing for any of the other creditors in this case.[5] As the Court stated in its Order setting the hearing, "[t]he purpose of the hearing [was] to determine whether the requested fee amounts should be reduced, given the amount of the benefit to the estate in this case. *See, e.g.*, 11 U.S.C. §§ 330(a)(2), (a)(3)(A), (a)(3)(E), (a)(3)(F), (a)(4)(A)(ii); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 887-89 (Bankr. W.D. Ky. 1996)."[6]

---

[3] Docket # 42 (the "Silverman & Morris Fee Application").

[4] *See* Docket # 45 at pdf page 11.

[5] *See* Order Setting Hearing on Fee Applications, filed April 24, 2018 (Docket # 48) at 1-2.

[6] *Id.* at 2.

2

The Court held the hearing on May 23, 2018. The Trustee's special counsel, attorney Thomas Morris, appeared at the hearing, and argued in support of the fee applications on behalf of all the fee applicants.[7] No one else appeared at the hearing.

**2. This Court's June 2018 ruling on the fee applications**

The Court then entered an opinion and order on June 4, 2018, entitled "Opinion and Order Regarding Fee Applications" (the "Opinion and Order").[8] In its Opinion and Order, the Court noted that the total fees ($40,360.31) and total expenses ($207.01) requested by the three fee applicants (plus "[b]ank service fees" of $143.55 the Trustee had paid), amounted to $40,710.87. The Court noted that the applicants' fees plus expenses, if allowed in the requested amounts, "would amount to 100% of the amount collected for the bankruptcy estate with the assistance of applicants' services, leaving nothing to be distributed to any non-administrative creditors."[9] And, the Court noted, those other creditors had allowed priority claims totaling $2,096.82 and allowed non-priority, unsecured claims totaling $117,910.10.[10]

The Court held:

> The Court finds and concludes that the fees requested are, in the aggregate, much too high to be reasonable under the circumstances of this case, and therefore fees will be allowed only in a reduced amount. The fees are disproportionately high compared to the financial benefit obtained by the bankruptcy estate from the

---

[7] Silverman & Morris also filed a brief in support of its fee application, on May 1, 2018 (Docket # 49).

[8] Docket # 53, which opinion and order is reported as *In re The Village Apothecary, Inc.*, 586 B.R. 430 (Bankr. E.D. Mich. 2018).

[9] *See* Opinion and Order at 1-2; 586 B.R. at 431; Trustee's Final Report (Docket # 45) at 1, 11-13.

[10] *See* Opinion and Order at 2; 586 B.R. at 431; Trustee's Final Report (Docket # 45) at 10, 12.

3

applicants' services, and in fact would leave nothing at all for the creditors in this Chapter 7 bankruptcy case.[11]

After discussing in detail the legal basis, under 11 U.S.C. § 330(a)[12] and case law, for

---

[11] Opinion and Order at 3; 586 B.R. at 432.

[12] Section 330(a) of the Bankruptcy Code provides, in the parts pertinent to the Silverman & Morris fee application, that the Court may award to a professional person employed by a Chapter 7 trustee "reasonable compensation for actual, necessary services rendered by the . . . professional person . . .; and "reimbursement for actual, necessary expenses." 11 U.S.C. §§ 330(a)(1)(A), 330(a)(1)(B). In determining the amount of such "reasonable compensation," the Court is guided, in pertinent part, by §§ 330(a)(2), 330(a)(3), and 330(a)(4)(A), which provide:

> (2) The court may, on its own motion or on the motion of the United States Trustee, the United States Trustee for the District or Region, the trustee for the estate, or any other party in interest, award compensation that is less than the amount of compensation that is requested.
>
> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
>
> (4)(A) Except as provided in subparagraph (B), the court shall not allow

(continued...)

reducing the applicant's fees in this situation,[13] this Court ruled that:

> The Court will allow the expenses requested in the fee applications in the full amounts requested, but the Court will allow fees only in amounts that, in the aggregate, do not exceed $20,355.44 ($40,710.87 x .50). The allowance of fees and expenses will be made by separate orders, to be entered at a future date, . . ..[14]

The Court gave the fee applicants the opportunity to stipulate as to how they wanted to allocate the aggregate fee amount among themselves, subject to their right to appeal the Court's fee reduction. The applicants filed such a stipulation on June 11, 2018, in which they agreed, subject to their right to appeal, to "allocate [the $20,355.44 fee total] as follows: (a) $17,079.77 to Silverman & Morris, P.L.L.C.; (b) $1,011.13 to Ellmann & Ellmann P.C.; and (c) $2,264.54 to Douglas S. Ellmann, Chapter 7 Trustee."[15]

On June 12, 2018, in response to the parties' stipulation, the Court entered fee orders in reduced amounts. Consistent with the Court's June 4, 2018 Opinion and Order, and the stipulation filed by the parties on June 11, 2018, the Court's orders awarded fees to the Trustee

---

[12](...continued)
  compensation for—

  (I) unnecessary duplication of services; or

  (ii) services that were not—

  (I) reasonably likely to benefit the debtor's estate;
  (II) necessary to the administration of the case.

11 U.S.C. § 330(a).

[13] *See also* the discussion in Part C of this Opinion.

[14] Opinion and Order at 7; 586 B.R. at 435.

[15] Stipulation Regarding Fee Allocation Pursuant to Opinion and Order Regarding Fee Applications (Docket # 54) at 1.

5

Douglas S. Ellmann and to Ellmann & Ellmann P.C. in the stipulated (reduced) amounts, *i.e.*, $2,264.54 and $1,011.13 respectively.[16]

But the Court made a mistake in the fee order it entered in favor of Silverman & Morris. That order allowed fees to Silverman & Morris in the reduced amount of $20,355.44.[17] That was an unintended error, however, because the Court meant to award Silverman & Morris fees of only $17,079.77. That is the reduced amount stipulated to by Silverman & Morris in the June 11 Stipulation, consistent with the Court's June 4 Opinion and Order. And that amount, when added to the amounts stipulated to and awarded to the two other fee applicants, totals $20,355.44, which is the aggregate fee amount set by the Court's June 4 Opinion and Order. The Court's fee order mistakenly allowed fees in the full aggregate amount of $20,355.44 solely for Silverman & Morris. That was an obvious math error by this Court, because that was the total amount of *all* fees that the Court said it would allow for all the applicants combined. But until today, that error by this Court has never been corrected.

**3. The appeal by Silverman & Morris**

Silverman & Morris appealed its $20,355.44 fee order to the district court. Even with its fee award at the inadvertently high (but reduced) amount of $20,355.44, Silverman & Morris argued on appeal that it was an abuse of discretion for this Court to reduce Silverman & Morris's fees from its requested amount of $33,984.25.[18]

---

[16] Docket ## 56, 57.

[17] Order Granting, in a Reduced Amount, Trustee's Special Counsel Final Application for Fees and Expenses (Docket # 55).

[18] The expense portion of the award to Silverman & Morris was not reduced, and is not at issue.

6

15-56003-tjt    Doc 75    Filed 12/03/19    Entered 12/03/19 10:23:37    Page 6 of 16

The other two fee applicants, Trustee Douglas S. Ellmann and his firm, did not appeal the Court's orders allowing their fees in the reduced amounts. So those two fee orders remain unaffected by the district court's appeal decision.

**B. The district court's appeal decision**

On August 23, 2019, the district court entered an order entitled "Order Reversing and Remanding the Case" (the "District Court Order").[19] The district court agreed with one of the arguments made by Silverman & Morris on appeal, and did not address other arguments. The district court held that this Court erred because it "failed to apply the lodestar method when calculating the attorney's fee award."[20] The district court explained:

> When determining the amount of attorney's fees to award in a bankruptcy case pursuant to 11 U.S.C. § 329, 330, the bankruptcy court must "[a]t a minimum . . . expressly calculate the lodestar amount." *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). The lodestar amount "is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'" *Id.* at 337 (quoting *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990)). **Once the bankruptcy court calculates the lodestar, it "may exercise its discretion to consider other factors such as** the novelty and difficulty of the issues, the special skills of counsel, **the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases** in the local area." *Id.* at 338 (citation omitted). But "[i]n many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the

---

[19] A copy of the district court's order is on file at Docket # 73 in this case.

[20] District Court Order (Docket # 73) at 1.

*reasonable* hours worked." *Id.* (citation omitted) (emphasis in original).[21]

The district court remanded the case to this Court with the following instructions:

> The Court will therefore reverse the bankruptcy court's June 4, 2018 and June 12, 2018 orders and remand the case to the bankruptcy court to determine the lodestar amount, which it may then adjust based on the factors set out in *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985) and adopted by the Sixth Circuit in *Boddy*, 950 F.2d at 338.[22]

**C. This Court's decision on remand**

The Court now will comply with the district court's mandate, and will apply the district court's instructions to the Silverman & Morris fee application.

**1. The lodestar calculation**

As quoted in Part B of this Opinion, the district court cited the Sixth Circuit decision in *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991), to describe the lodestar calculation: "The lodestar amount 'is calculated by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'"[23]

In its prior ruling on the Silverman & Morris fee application, this Court did not quarrel with or criticize either the hourly rates or the number of hours that were included in the fee application. But neither did the Court explicitly make a lodestar calculation. It will do so now.

The Silverman & Morris Fee Application sought approval of fees totaling $36,889.25, on an hourly-rate basis, for the work of three attorneys in the firm: Thomas R. Morris (37.45 hours at

---

[21] *Id.* at 2 (emphasis added).

[22] *Id.* at 3.

[23] *Id.* at 2.

a rate of $350.00 per hour); Karin F. Avery (62.30 hours at a rate of $310.00 per hour); and Melinda B. Oviatt (16.25 hours at a rate of $275.00 per hour).[24]

The Court finds that the above hourly rates are reasonable, and finds that the number of hours expended by these attorneys is reasonable. There is no need for extended discussion of why this is so, because the Court agrees with Silverman & Morris on these points, and no one has argued otherwise.

Thus, the lodestar amount for the fees of Silverman & Morris is $36,889.25.

**2. Discretionary adjustment(s) to the lodestar amount**

As noted in Part B of this Opinion, the district court quoted *In re Boddy* in holding that:

> Once the bankruptcy court calculates the lodestar, it "may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area."[25]

In its remand order, the district court has instructed this Court "to determine the lodestar amount, which it may then adjust based on the factors set out in *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985) and adopted by the Sixth Circuit in *Boddy*, 950 F.2d at 338."[26]

The district court's reference to "the factors set out in *Harman v. Levin* . . . and adopted by the Sixth Circuit in *Boddy*," no doubt is based on the following passage from *Boddy*:

> The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the

---

[24] Silverman & Morris Fee Application, Exs. 4 and 5 (Docket ## 42-4 and 42-5).

[25] District Court Order at 2, quoting *In re Boddy*, 950 F.2d at 338.

[26] District Court Order at 3.

9

special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. *See Harman*, 772 F.2d at 1152 n. 1 (citing twelve factors bankruptcy courts may consider).

*Boddy*, 950 F.2d at 338. Under the district court's remand order, and under *Boddy*, therefore, this Court has discretion to adjust the lodestar fee amount, after considering other factors, including, specifically, "the results obtained," and whether the fee "is commensurate with fees for similar professional services in non-bankruptcy cases."

Also under the district court's remand order and under *Boddy*, this Court has discretion to adjust the lodestar fee amount after considering the factors set out in *Harman v. Levin*, which are the following:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Harman v. Levin* (*In re Robertson*), 772 F.2d 1150, 1152 n.1 (4th Cir. 1985) (citations omitted). Therefore, on remand this Court has discretion to adjust the lodestar fee amount, after considering factors that include, in the words of *Harman*, "the customary fee for like work;" "the amount in controversy and the results obtained;" and "attorneys' fees awards in similar cases."

The Court must consider the Silverman & Morris fee application in this case in light of the discretionary adjustment factors recognized by the district court, by *Boddy*, and by *Harman*. In this case, with two exceptions, the possible adjustment factors do not justify any adjustment, up or

10

down, of the lodestar fee amount. But two of the factors are particularly important here — namely, in the words of *Boddy*, "the results obtained" for the bankruptcy estate by the work of Silverman & Morris; and whether the lodestar fee amount "is commensurate with fees for similar professional services in non-bankruptcy cases." *See Boddy*, 950 F.3d at 338.

Based on these factors, the Court concludes that Silverman & Morris's lodestar fee amount should be adjusted downward, substantially. The "results obtained" were that Silverman & Morris's work in this case, together with the work of the Trustee's other counsel (Ellmann & Ellmann, P.C.) and the Trustee, helped recover, at most, $40,710.31 for the bankruptcy estate (the total receipts listed in the Trustee's Final Report). Almost 91% of that amount would be consumed by the lodestar fee amount for Silverman & Morris alone ($36,889.25). *All* of that "results obtained" amount would be consumed when the fees of the Trustee's other counsel and the Trustee are considered. Creditors would get nothing at all.

The Court reiterates and adopts again the following conclusions stated in its June 4, 2018 Opinion and Order:

> The Court finds and concludes that the fees requested are, in the aggregate, much too high to be reasonable under the circumstances of this case, and therefore fees will be allowed only in a reduced amount. The fees are disproportionately high compared to the financial benefit obtained by the bankruptcy estate from the applicants' services, and in fact would leave nothing at all for the creditors in this Chapter 7 bankruptcy case.[27]

And the Court reiterates and adopts again the following from its June 4, 2018 Opinion and Order:

> [In] the case [of] . . . *In re Allied Computer Repair, Inc.*, [202 B.R. 877 (Bankr. W.D. Ky. 1996)], . . . among the things that that Court held, which I agree with, are . . . that, as the Court pointed out, 202

---

[27] Opinion and Order at 3; 586 B.R. at 432.

> [B.R.] at 886, **"The majority of courts agree that the results obtained is a major factor in determining whether the services at issue bestowed a benefit upon the estate,"** [citations omitted]. There are many citations there for that proposition. And, further, the Court stated at page 887 that . . . "The overwhelming majority of courts have recognized that a reasonable attorney fee for purposes of Section 330 is one that is commensurate with the potential or actual value obtained. . . ." And then further the Court says on that page, . . . **"The Bankruptcy Court has the authority to reduce the requested attorney fees when disproportionate to the benefit produced thereby,"** [citations omitted].[28]

The Court must remember that a critical function of the Chapter 7 Trustee and the professionals employed by the Chapter 7 Trustee is to produce results for the creditors in the case — to maximize distributions that are paid to the creditors. Attorneys for the Chapter 7 Trustee work for the benefit of the creditors in the case. As one court has put it,

> [T]he bankruptcy process is not designed "principally to serve as a fund for payment of professional fees." Rather, one of its main purposes is to maximize the estate for distribution to the creditors. As [one court] aptly stated:
>
>> The estate is not a cash cow to be milked to death by professionals seeking compensation for services rendered to the estate which have not produced a benefit commensurate with the fees sought.
>
> . . . It must be remembered that "every dollar spent on legal fees results in a dollar less that is available to the estate and its creditors."

*In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D. Ky. 1996) (citations omitted).

Closely related to the "results obtained" factor in this context is the concept of billing judgment. That concept is implicit in the *Boddy* factor whether the fee "is commensurate with

---

[28] Opinion and Order at 4; 586 B.R. at 433.

12

15-56003-tjt    Doc 75    Filed 12/03/19    Entered 12/03/19 10:23:37    Page 12 of 16

fees for similar professional services in non-bankruptcy cases." In the real world of law practice outside of bankruptcy, of course, attorneys who represent clients regularly exercise billing judgment. The Court reiterates and adopts again its discussion of this in its June 4, 2018 Opinion and Order:

> **[A]mong the factors explicitly set out in Section 330(a) to determine reasonableness, they include the factor in Section 330(a)(3)(F),** . . . **"whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title[.]"**
> . . .
>
> **Among other places where this concept of results obtained being a major factor in determining reasonableness is in Section 330(a)(3)(F),** . . . **whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title, that provision** . . . **as well as Section 330(a)(3)(C) and 330(a)(4)(A)** . . . **include the concept of billing judgment** . . . -- which is sort of a general concept, but one of the things . . . that includes, of course, is that, in general, **lawyers in bankruptcy cases but also in nonbankruptcy cases when they have a paying client exercise billing judgment because clients generally expect . . . when there's some . . . monetary result obtained for the client in the case, the client . . . does not expect to pay all of that result obtained or money obtained to their attorneys or professionals in professional fees for obtaining that result and to no gain to the client. It [is], of course, common in the exercise of billing judgment and in the nonbankruptcy litigation world for paying clients and their lawyers to negotiate reductions in the fees of the professional** even though the professional did spend the time and had a reasonable hourly rate and did spend a reasonable amount of time that would yield on an hourly rate basis a higher fee than what they're actually paid. In any event, results obtained is a major factor . . .. **Consideration of that as a major factor sometimes does result, in my view, in professionals in a Chapter 7 case**, in particular, and trustees as well sometimes . . . **receiving allowance of fees in amounts that are lower** than what would be reflected by their normal hourly rate times the amount of time they reasonably spent . . . on the tasks that they performed in doing their work **because the . . . actual results obtained as a result of the work**

13

> **were such that the fee requested is disproportionately high compared to the results obtained.** [29]

*See also In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 855-56 (3rd Cir. 1994) ("because § 330(a) does not entitle debtors' attorneys to any *higher* compensation than that earned by non-bankruptcy attorneys, the court should review a fee application to ensure the applicant exercises the same 'billing judgment' as do non-bankruptcy attorneys . . ..") (italics in original) (citations omitted).

The Court is mindful of the district court's admonition, taken from *Boddy*, about making discretionary adjustments to the lodestar fee amount. The admonition is that "in many cases," these discretionary adjustment factors "will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked."[30]

But this case is not like the "many cases" referred to. Here the lodestar fee amount of professional fees is much too large in relation to the "results obtained" and in relation to what fees ought to result from good "billing judgment" by the lawyers. Here, if the Court simply allowed fees in the lodestar fee amount, it would utterly defeat the very purpose for which the Trustee's attorneys were hired in the first place — to benefit the creditors in the bankruptcy case.

The *Boddy* factors just discussed persuade the Court to make the same ultimate conclusion it made the first time, in its June 4, 2018 Opinion and Order — that the fees of the Trustee and his attorneys in this case should be allowed only in a reduced amount that, in the aggregate, do not

---

[29] Opinion and Order at 3-5; 586 B.R. at 433-34 (bold in original) (citations omitted).

[30] District Court Order at 2, quoting *Boddy*, 950 F.2d at 338 (citation omitted) (emphasis in original).

exceed 50% of the total assets of the bankruptcy estate.[31] This outcome strikes a fair and appropriate balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that "the creditors in this case may receive a fair and meaningful distribution on their allowed claims."[32]

For the reasons already discussed, this result is consistent with *Boddy*, and with the factors that *Boddy* permits bankruptcy courts to consider in making discretionary adjustments to the lodestar fee amount. And the result here is not inconsistent with the more specific holding in *Boddy*. In *Boddy*, the Sixth Circuit held that a bankruptcy court could not set a maximum, fixed fee amount for the work of a debtor's attorney in a Chapter 13 case, because that would be inconsistent with Bankruptcy Code § 330. *See* 950 F.2d at 337. The Sixth Circuit held that the bankruptcy court in the Western District of Kentucky had erred in following one of its prior cases, which had "established a maximum attorney's fee of $650.00 for legal services considered to be 'normal and customary' for a Chapter 13 bankruptcy case in the Western District of Kentucky." *Id.* at 335, 337.

The Court's decision in this case is not based on any pre-established, fixed-dollar fee amounts for the Trustee and his attorneys. Rather, the Court in its discretion is adjusting the fees

---

[31] *Cf. In re Allied Computer Repair, Inc.*, 202 B.R. at 888 (citations omitted):

> [A] reasonable award of attorney fees and expenses attributable to an attorney's representation in a particular adversary proceeding should be limited to certainly no more than 50% of the amount recovered through the adversary proceeding by the Applicant. In fact, efforts should be made by the attorney to hold fees substantially below that percentage of recovery. Reducing fees to no more than 50% of the amount recovered is in line, and perhaps even more generous, than the reduction in fees imposed by numerous courts that have dealt with this issue.

[32] Opinion and Order at 7; 586 B.R. at 435.

downward from the lodestar fee amount, as permitted by *Boddy*. In doing so, this Court chooses not to ignore the "results obtained" by the Chapter 7 Trustee and his professionals, and chooses not to approve fees that would leave the creditors with nothing.

**D. Conclusion**

For the reasons stated in this Opinion, the Court will enter an order granting the fee application of Silverman & Morris in part, and allowing fees for Silverman & Morris in the reduced amount of $17,079.77, plus reimbursement of expenses in the amount of $174.74.

**Signed on December 3, 2019**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**