UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

THE VILLAGE APOTHECARY, INC.,

        Debtor.

_____/

Case No. 15-56003

Chapter 7

Judge Thomas J. Tucker

**OPINION ON SECOND REMAND, REGARDING THE FEE APPLICATION OF SILVERMAN & MORRIS PLLC, CHAPTER 7 TRUSTEE'S SPECIAL COUNSEL**

## I. Introduction

In this bankruptcy case, special counsel for the Chapter 7 Trustee, the attorney for the Chapter 7 Trustee, and the Chapter 7 Trustee filed fee applications, which if approved in the amount of fees requested, when added to the amounts of requested expenses to be reimbursed, would have resulted in the applicants being paid 100% of the amount collected for the bankruptcy estate with assistance of the applicants' services. That would have left nothing at all to be distributed to any of the creditors.

This Court viewed such result, in this case, to be at odds with the primary purpose for which these professionals were employed — to represent the interests of creditors and maximize the funds in the bankruptcy estate for distribution to creditors. After conducting a hearing on the fee applications, and considering the applications, a brief filed in support of the applications, and a supplement in support of the applications, this Court approved fees for these professionals in reduced amounts, thereby enabling creditors of the estate to receive some benefit from the services of these professionals.

One of the applicants disagreed with having its fees reduced. That disagreement has led to two appeals by that applicant, followed by reversals by the United States District Court of this

Court's fee orders, and remands with instructions on what standards and factors this Court should consider in reviewing this applicant's fee application. The procedural history regarding the fee application at issue is described below.

Now this case is before the Court on a second remand from the United States District Court. That remand results from the district court's opinion and order filed November 6, 2020, in Case No. 2:19-cv-13659, entitled "Opinion and Order Reversing and Remanding the Case" (the "Second Remand Order").[1] The remand concerns the attorney fees to be awarded in this bankruptcy case to the firm of Silverman & Morris PLLC ("Silverman & Morris"), for their work as special counsel for the Chapter 7 Trustee.

The Second Remand Order resulted from a second appeal by Silverman & Morris; that appeal was from this Court's Order entered on December 3, 2019, entitled "Order after Remand, Granting, in a Reduced Amount, the Final Fee Application of Silverman & Morris PLLC, the Chapter 7 Trustee's Special Counsel" (the "Fee Order After First Remand").[2] That Order was explained and supported by this Court's opinion, also filed December 3, 2019, entitled "Opinion on Remand, Regarding the Fee Application of Silverman & Morris PLLC, Chapter 7 Trustee's Special Counsel" (the "Opinion After First Remand").[3]

---

[1] A copy of the district court's opinion and order is on file in this bankruptcy case, at Docket # 87.

[2] Docket # 76.

[3] Docket # 75. This is a published opinion, *In re: The Village Apothecary, Inc.*, 608 B.R. 666 (Bankr. E.D. Mich. 2019).

The Second Remand Order requires this Court to consider, for a third time, the question of how much in attorney fees this Court should allow to Silverman & Morris. This Opinion will discuss and explain this Court's decision on this latest remand.

## II. Background

### A. Events that occurred before Silverman & Morris's first appeal

To describe much of the background of this case, the Court will quote from its Opinion After First Remand.[4] The following events occurred before Silverman & Morris's first appeal to the district court:

#### 1. The fee applications filed in this case

After the Chapter 7 Trustee filed his final report in this bankruptcy case, the Court considered the fee applications filed by the Trustee, by Trustee's counsel, Ellmann & Ellmann P.C., and by Silverman & Morris. These three applicants filed applications seeking allowance of attorney fees and reimbursement of expenses in the following amounts:

- Douglas S. Ellmann, Chapter 7 Trustee: fees of $4,821.09; expenses of $49.96

- Ellmann & Ellmann P.C., attorneys for the Trustee: fees of $2,100.00; expenses of $0.00

- Silverman & Morris, special counsel for the Trustee: fees of $36,889.25; expenses of $174.74

Because there was not enough money in the bankruptcy estate to actually pay these fee and expense amounts in full, the applicants later modified their requests, and ultimately sought fees and expenses in the following reduced amounts, as reflected in the Trustee's Final Report:

---

[4] In quoting from its prior opinion, the Court will omit most of the footnotes, which mainly contain record citations.

- Douglas S. Ellmann, Chapter 7 Trustee: fees of $4,441.43; expenses of $46.03

- Ellmann & Ellmann P.C., attorneys for the Trustee: fees of $1,934.63; expenses of $0.00

- Silverman & Morris, special counsel for the Trustee: fees of $33,984.25; expenses of $160.98

Although no timely objections were filed, the Court concluded that it was necessary to hold a hearing on the fee applications. In its Order setting the hearing, the Court expressed its concern that the fees requested by the applicants appeared to be unreasonably high, because they would consume all of the assets of the bankruptcy estate, leaving nothing for any of the other creditors in this case. As the Court stated in its Order setting the hearing, "[t]he purpose of the hearing [was] to determine whether the requested fee amounts should be reduced, given the amount of the benefit to the estate in this case. *See, e.g.*, 11 U.S.C. §§ 330(a)(2), (a)(3)(A), (a)(3)(E), (a)(3)(F), (a)(4)(A)(ii); *In re Allied Computer Repair, Inc.*, 202 B.R. 877, 887-89 (Bankr. W.D. Ky. 1996)."

The Court held the hearing on May 23, 2018. The Trustee's special counsel, attorney Thomas Morris, appeared at the hearing, and argued in support of the fee applications on behalf of all the fee applicants. No one else appeared at the hearing.

**2. This Court's June 2018 ruling on the fee applications**

The Court then entered an opinion and order on June 4, 2018, entitled "Opinion and Order Regarding Fee Applications" (the "Opinion and Order").[5] In its Opinion and Order, the Court noted that the total fees ($40,360.31) and total expenses ($207.01) requested by the three fee applicants (plus "[b]ank service fees" of $143.55 the Trustee had paid), amounted to $40,710.87. The Court noted that the applicants' fees plus expenses, if allowed in the requested amounts, "would amount to 100% of the amount collected for the bankruptcy estate with the assistance of applicants' services, leaving nothing to be distributed to any non-administrative creditors." And, the Court noted, those other

---

[5] Docket # 5. The opinion and order is reported as *In re The Village Apothecary, Inc.*, 586 B.R. 430 (Bankr. E.D. Mich. 2018).

4

creditors had allowed priority claims totaling $2,096.82 and allowed non-priority, unsecured claims totaling $117,910.10.

The Court held:

> The Court finds and concludes that the fees requested are, in the aggregate, much too high to be reasonable under the circumstances of this case, and therefore fees will be allowed only in a reduced amount. The fees are disproportionately high compared to the financial benefit obtained by the bankruptcy estate from the applicants' services, and in fact would leave nothing at all for the creditors in this Chapter 7 bankruptcy case.

After discussing in detail the legal basis, under 11 U.S.C. § 330(a) and case law, for reducing the applicant's fees in this situation, this Court ruled that:

> The Court will allow the expenses requested in the fee applications in the full amounts requested, but the Court will allow fees only in amounts that, in the aggregate, do not exceed $20,355.44 ($40,710.87 x .50). The allowance of fees and expenses will be made by separate orders, to be entered at a future date, . . . .

The Court gave the fee applicants the opportunity to stipulate as to how they wanted to allocate the aggregate fee amount among themselves, subject to their right to appeal the Court's fee reduction. The applicants filed such a stipulation on June 11, 2018, in which they agreed, subject to their right to appeal, to "allocate [the $20,355.44 fee total] as follows: (a) $17,079.77 to Silverman & Morris, P.L.L.C.; (b) $1,011.13 to Ellmann & Ellmann P.C.; and (c) $2,264.54 to Douglas S. Ellmann, Chapter 7 Trustee."

On June 12, 2018, in response to the parties' stipulation, the Court entered fee orders in reduced amounts. Consistent with the Court's June 4, 2018 Opinion and Order, and the stipulation filed by the parties on June 11, 2018, the Court's orders awarded fees to the Trustee Douglas S. Ellmann and to Ellmann & Ellmann P.C. in the stipulated (reduced) amounts, *i.e.*, $2,264.54 and $1,011.13 respectively.

5

But the Court made a mistake in the fee order it entered in favor of Silverman & Morris. That order allowed fees to Silverman & Morris in the reduced amount of $20,355.44. That was an unintended error, however, because the Court meant to award Silverman & Morris fees of only $17,079.77. That is the reduced amount stipulated to by Silverman & Morris in the June 11 Stipulation, consistent with the Court's June 4 Opinion and Order. And that amount, when added to the amounts stipulated to and awarded to the two other fee applicants, totals $20,355.44, which is the aggregate fee amount set by the Court's June 4 Opinion and Order. The Court's fee order mistakenly allowed fees in the full aggregate amount of $20,355.44 solely for Silverman & Morris. That was an obvious math error by this Court, because that was the total amount of *all* fees that the Court said it would allow for all the applicants combined. But until today, that error by this Court has never been corrected.[6]

## B. Silverman & Morris's first appeal to the district court

This Court's First Opinion After Remand described Silverman & Morris's first appeal to the district court, and the resulting district court decision:

### [1]. The appeal by Silverman & Morris

Silverman & Morris appealed its $20,355.44 fee order to the district court. Even with its fee award at the inadvertently high (but reduced) amount of $20,355.44, Silverman & Morris argued on appeal that it was an abuse of discretion for this Court to reduce Silverman & Morris's fees from its requested amount of $33,984.25.

The other two fee applicants, Trustee Douglas S. Ellmann and his firm, did not appeal the Court's orders allowing their fees in the reduced amounts. So those two fee orders remain unaffected by the district court's appeal decision.

### [2]. The district court's appeal decision

---

[6] The foregoing portion of the background is quoted from the First Opinion After Remand, 608 B.R. at 669-72 (most footnotes omitted).

On August 23, 2019, the district court entered an order entitled "Order Reversing and Remanding the Case" (the "District Court Order"). The district court agreed with one of the arguments made by Silverman & Morris on appeal, and did not address other arguments. The district court held that this Court erred because it "failed to apply the lodestar method when calculating the attorney's fee award." The district court explained:

> When determining the amount of attorney's fees to award in a bankruptcy case pursuant to 11 U.S.C. § 329, 330, the bankruptcy court must "[a]t a minimum . . . expressly calculate the lodestar amount." *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). The lodestar amount "is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'" *Id.* at 337 (quoting *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 879 (11th Cir. 1990)). **Once the bankruptcy court calculates the lodestar, it "may exercise its discretion to consider other factors such as** the novelty and difficulty of the issues, the special skills of counsel, **the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases** in the local area." *Id.* at 338 (citation omitted). But "[i]n many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked." *Id.* (citation omitted) (emphasis in original).

The district court remanded the case to this Court with the following instructions:

> The Court will therefore reverse the bankruptcy court's June 4, 2018 and June 12, 2018 orders and remand the case to the bankruptcy court to determine the lodestar amount, which it may then adjust based on the factors set out in *Harman v. Levin*, 772 F.2d

1150, 1152 (4th Cir. 1985) and adopted by the Sixth
Circuit in *Boddy*, 950 F.2d at 338.[7]

## C. This Court's decision after the district court's first remand

In response to the district court's first remand decision, this Court explicitly determined

the "lodestar amount" of fees, and then made a discretionary downward adjustment of that

lodestar amount, in a manner that this Court considered to be consistent with the district court's

mandate. This Court's calculations were described in the Opinion After First Remand:

> The Court now will comply with the district court's
> mandate, and will apply the district court's instructions to the
> Silverman & Morris fee application.

> ### 1. The lodestar calculation

> As quoted in Part B of this Opinion, the district court cited
> the Sixth Circuit decision in *In re Boddy*, 950 F.2d 334, 338 (6th
> Cir. 1991), to describe the lodestar calculation: "The lodestar
> amount 'is calculated by multiplying the attorney's reasonable
> hourly rate by the number of hours reasonably expended.'"

> In its prior ruling on the Silverman & Morris fee application,
> this Court did not quarrel with or criticize either the hourly rates or
> the number of hours that were included in the fee application. But
> neither did the Court explicitly make a lodestar calculation. It will
> do so now.

> The Silverman & Morris Fee Application sought approval of
> fees totaling $36,889.25, on an hourly-rate basis, for the work of
> three attorneys in the firm: Thomas R. Morris (37.45 hours at a rate
> of $350.00 per hour); Karin F. Avery (62.30 hours at a rate of
> $310.00 per hour); and Melinda B. Oviatt (16.25 hours at a rate of
> $275.00 per hour).

> The Court finds that the above hourly rates are reasonable,
> and finds that the number of hours expended by these attorneys is

---

[7] The foregoing portion of the background is quoted from the Opinion After First Remand, 608
B.R. at 672-73 (footnotes omitted) (bold emphasis in original of First Opinion After Remand).

reasonable. There is no need for extended discussion of why this is so, because the Court agrees with Silverman & Morris on these points, and no one has argued otherwise.

Thus, the lodestar amount for the fees of Silverman & Morris is $36,889.25.

## 2. Discretionary adjustment(s) to the lodestar amount

As noted in Part B of this Opinion, the district court quoted *In re Boddy* in holding that:

> Once the bankruptcy court calculates the lodestar, it "may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area."

In its remand order, the district court has instructed this Court "to determine the lodestar amount, which it may then adjust based on the factors set out in *Harman v. Levin*, 772 F.2d 1150, 1152 (4th Cir. 1985) and adopted by the Sixth Circuit in *Boddy*, 950 F.2d at 338."

The district court's reference to "the factors set out in *Harman v. Levin* . . . and adopted by the Sixth Circuit in *Boddy*," no doubt is based on the following passage from *Boddy*:

> The bankruptcy court also may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. *See Harman*, 772 F.2d at 1152 n. 1 (citing twelve factors bankruptcy courts may consider).

*Boddy*, 950 F.2d at 338. Under the district court's remand order, and under *Boddy*, therefore, this Court has discretion to adjust the lodestar fee amount, after considering other factors, including, specifically, "the results obtained," and whether the fee "is

9

commensurate with fees for similar professional services in non-bankruptcy cases."

Also under the district court's remand order and under *Boddy*, this Court has discretion to adjust the lodestar fee amount after considering the factors set out in *Harman v. Levin*, which are the following:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Harman v. Levin* (*In re Robertson*), 772 F.2d 1150, 1152 n.1 (4th Cir. 1985) (citations omitted). Therefore, on remand this Court has discretion to adjust the lodestar fee amount, after considering factors that include, in the words of *Harman*, "the customary fee for like work;" "the amount in controversy and the results obtained;" and "attorneys' fees awards in similar cases."

The Court must consider the Silverman & Morris fee application in this case in light of the discretionary adjustment factors recognized by the district court, by *Boddy*, and by *Harman*. In this case, with two exceptions, the possible adjustment factors do not justify any adjustment, up or down, of the lodestar fee amount. But two of the factors are particularly important here — namely, in the words of *Boddy*, "the results obtained" for the bankruptcy estate by the work of Silverman & Morris; and whether the lodestar fee amount "is commensurate with fees for similar professional services in non-bankruptcy cases." *See Boddy*, 950 F.3d at 338.

Based on these factors, the Court concludes that Silverman & Morris's lodestar fee amount should be adjusted downward,

10

substantially. The "results obtained" were that Silverman & Morris's work in this case, together with the work of the Trustee's other counsel (Ellmann & Ellmann, P.C.) and the Trustee, helped recover, at most, $40,710.31 for the bankruptcy estate (the total receipts listed in the Trustee's Final Report). Almost 91% of that amount would be consumed by the lodestar fee amount for Silverman & Morris alone ($36,889.25). *All* of that "results obtained" amount would be consumed when the fees of the Trustee's other counsel and the Trustee are considered. Creditors would get nothing at all.

The Court reiterates and adopts again the following conclusions stated in its June 4, 2018 Opinion and Order:

> The Court finds and concludes that the fees requested are, in the aggregate, much too high to be reasonable under the circumstances of this case, and therefore fees will be allowed only in a reduced amount. The fees are disproportionately high compared to the financial benefit obtained by the bankruptcy estate from the applicants' services, and in fact would leave nothing at all for the creditors in this Chapter 7 bankruptcy case.

And the Court reiterates and adopts again the following from its June 4, 2018 Opinion and Order:

> [In] the case [of] . . . *In re Allied Computer Repair, Inc.*, [202 B.R. 877 (Bankr. W.D. Ky. 1996)], . . . among the things that that Court held, which I agree with, are . . . that, as the Court pointed out, 202 [B.R.] at 886, **"The majority of courts agree that the results obtained is a major factor in determining whether the services at issue bestowed a benefit upon the estate,"** [citations omitted]. There are many citations there for that proposition. And, further, the Court stated at page 887 that . . . "The overwhelming majority of courts have recognized that a reasonable attorney fee for purposes of Section 330 is one that is commensurate with the potential or actual value obtained. . . ." And then further the Court says on that page, . . . **"The Bankruptcy Court has the authority to reduce the**

11

**requested attorney fees when disproportionate to
the benefit produced thereby,"** [citations omitted].

The Court must remember that a critical function of the
Chapter 7 Trustee and the professionals employed by the Chapter 7
Trustee is to produce results for the creditors in the case — to
maximize distributions that are paid to the creditors. Attorneys for
the Chapter 7 Trustee work for the benefit of the creditors in the
case. As one court has put it,

> [T]he bankruptcy process is not designed
> "principally to serve as a fund for payment of
> professional fees." Rather, one of its main purposes
> is to maximize the estate for distribution to the
> creditors. As [one court] aptly stated:
>
>> The estate is not a cash cow to be
>> milked to death by professionals
>> seeking compensation for services
>> rendered to the estate which have not
>> produced a benefit commensurate
>> with the fees sought.
>
> . . . It must be remembered that "every dollar spent
> on legal fees results in a dollar less that is available
> to the estate and its creditors."

*In re Allied Computer Repair, Inc.*, 202 B.R. 877, 886 (Bankr. W.D.
Ky. 1996) (citations omitted).

Closely related to the "results obtained" factor in this
context is the concept of billing judgment. That concept is implicit
in the *Boddy* factor whether the fee "is commensurate with fees for
similar professional services in non-bankruptcy cases." In the real
world of law practice outside of bankruptcy, of course, attorneys
who represent clients regularly exercise billing judgment. The
Court reiterates and adopts again its discussion of this in its June 4,
2018 Opinion and Order:

> [A]mong the factors explicitly set out in Section
> 330(a) to determine reasonableness, they include the
> factor in Section 330(a)(3)(F), . . . "whether the
> compensation is reasonable based on the customary
> compensation charged by comparably skilled

12

practitioners in cases other than cases under this
title[.]"
. . .

Among other places where this concept of results
obtained being a major factor in determining
reasonableness is in Section 330(a)(3)(F), . . .
whether the compensation is reasonable based on the
customary compensation charged by comparably
skilled practitioners in cases other than cases under
this title, that provision . . . as well as Section
330(a)(3)(C) and 330(a)(4)(A) . . . include the
concept of billing judgment . . . -- which is sort of a
general concept, but one of the things . . . that
includes, of course, is that, in general, **lawyers in
bankruptcy cases but also in nonbankruptcy
cases when they have a paying client exercise
billing judgment because clients generally expect .
. . when there's some . . . monetary result
obtained for the client in the case, the client . . .
does not expect to pay all of that result obtained
or money obtained to their attorneys or
professionals in professional fees for obtaining
that result and to no gain to the client. It [is], of
course, common in the exercise of billing
judgment and in the nonbankruptcy litigation
world for paying clients and their lawyers to
negotiate reductions in the fees of the professional**
even though the professional did spend the time and
had a reasonable hourly rate and did spend a
reasonable amount of time that would yield on an
hourly rate basis a higher fee than what they're
actually paid. In any event, results obtained is a
major factor . . .. **Consideration of that as a major
factor sometimes does result, in my view, in
professionals in a Chapter 7 case**, in particular, and
trustees as well sometimes . . . **receiving allowance
of fees in amounts that are lower** than what would
be reflected by their normal hourly rate times the
amount of time they reasonably spent . . . on the
tasks that they performed in doing their work
**because the . . . actual results obtained as a result
of the work were such that the fee requested is**

13

> **disproportionately high compared to the results obtained.**

See also In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 855-56 (3rd Cir. 1994) ("because § 330(a) does not entitle debtors' attorneys to any *higher* compensation than that earned by non-bankruptcy attorneys, the court should review a fee application to ensure the applicant exercises the same 'billing judgment' as do non-bankruptcy attorneys . . ..") (italics in original) (citations omitted).

The Court is mindful of the district court's admonition, taken from *Boddy*, about making discretionary adjustments to the lodestar fee amount. The admonition is that "in many cases," these discretionary adjustment factors "will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the *reasonable* hourly rate and the *reasonable* hours worked."

But this case is not like the "many cases" referred to. Here the lodestar fee amount of professional fees is much too large in relation to the "results obtained" and in relation to what fees ought to result from good "billing judgment" by the lawyers. Here, if the Court simply allowed fees in the lodestar fee amount, it would utterly defeat the very purpose for which the Trustee's attorneys were hired in the first place — to benefit the creditors in the bankruptcy case.

The *Boddy* factors just discussed persuade the Court to make the same ultimate conclusion it made the first time, in its June 4, 2018 Opinion and Order — that the fees of the Trustee and his attorneys in this case should be allowed only in a reduced amount that, in the aggregate, do not exceed 50% of the total assets of the bankruptcy estate.[8] This outcome strikes a fair and appropriate

---

[8] *Cf. In re Allied Computer Repair, Inc.*, 202 B.R. at 888 (citations omitted):

[A] reasonable award of attorney fees and expenses attributable to an attorney's representation in a particular adversary proceeding should be limited to certainly no more than 50% of the amount recovered through the adversary proceeding by the Applicant. In fact, efforts should be made by the attorney to hold fees substantially below that percentage of recovery. Reducing fees to no more than 50% of the amount recovered is

(continued...)

14

balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that "the creditors in this case may receive a fair and meaningful distribution on their allowed claims."

For the reasons already discussed, this result is consistent with *Boddy*, and with the factors that *Boddy* permits bankruptcy courts to consider in making discretionary adjustments to the lodestar fee amount. And the result here is not inconsistent with the more specific holding in *Boddy*. In *Boddy*, the Sixth Circuit held that a bankruptcy court could not set a maximum, fixed fee amount for the work of a debtor's attorney in a Chapter 13 case, because that would be inconsistent with Bankruptcy Code § 330. *See* 950 F.2d at 337. The Sixth Circuit held that the bankruptcy court in the Western District of Kentucky had erred in following one of its prior cases, which had "established a maximum attorney's fee of $650.00 for legal services considered to be 'normal and customary' for a Chapter 13 bankruptcy case in the Western District of Kentucky." *Id.* at 335, 337.

The Court's decision in this case is not based on any pre-established, fixed-dollar fee amounts for the Trustee and his attorneys. Rather, the Court in its discretion is adjusting the fees downward from the lodestar fee amount, as permitted by *Boddy*. In doing so, this Court chooses not to ignore the "results obtained" by the Chapter 7 Trustee and his professionals, and chooses not to approve fees that would leave the creditors with nothing.

**[3]. Conclusion**

For the reasons stated in this Opinion, the Court will enter an order granting the fee application of Silverman & Morris in part, and allowing fees for Silverman & Morris in the reduced amount of $17,079.77, plus reimbursement of expenses in the amount of $174.74.[9]

_____

[8](...continued)
in line, and perhaps even more generous, than the reduction in fees imposed by numerous courts that have dealt with this issue.

[9]  The foregoing portion of the background is quoted from the Opinion After First Remand, 608 B.R. at 663-77 (most footnotes omitted) (bold emphasis in original of Opinion After Remand; some bold emphasis removed).

**D. Silverman & Morris's second appeal to the district court**

Silverman & Morris appealed to the district court a second time, from the Court's $17,079.77 fee award. That appeal resulted in the district court's November 6, 2020 Second Remand Order. The district court acknowledged that under 11 U.S.C. § 330(a)(2), "[w]hen a professional person applies for fees, the bankruptcy court may 'on its own motion . . . award compensation that is less than the amount of compensation that is requested.'"[10] The district court held that this Court "properly conducted the required lodestar analysis" under *Boddy*,[11] in calculating the lodestar fee amount for Silverman & Morris as $36,889.25. But the district court found error in this Court's reasoning for adjusting the lodestar amount downward to $17,079.77.

**III. Discussion of the district court's decision, and this Court's decision on the current remand**

**A. "The amount in controversy and the results obtained"**

**1. The district court's ruling**

The district court identified two errors in this Court's reasoning. First, the district court held that this Court erred in considering "the results obtained" by the Trustee's counsel, because the Court did not also consider "the amount in controversy" when considering the results obtained. The district court explained this as follows:

> Under [this] factor, the bankruptcy court must weigh "the amount in controversy *and* the results obtained[.]" *Harman*, 772 F.2d at 1152 n.1 (emphasis added). But the bankruptcy court weighed only the second part of the factor—"the results obtained"—without ever considering the first part—"the amount in controversy[.]" Based on the plain text of the eighth factor, the bankruptcy court must

---

[10] Second Remand Order (Docket # 87) at 4.

[11] *Id.*

examine both parts together. *See Harman*, 772 F.2d at 1152 n.1; . . . The bankruptcy court's failure to examine "the results obtained" given "the amount in controversy" was therefore an improper application of the *Boddy* factor. Thus, the bankruptcy court abused its discretion.[12]

As to this factor, the district court directed that "[o]n remand, the bankruptcy court may weigh the 'results obtained' by Appellant so long as it also weighs 'the amount in controversy[.]' *Harman*, 772 F.2d at 1152 n.1."[13]

The district court did not explain or discuss how "the amount in controversy" is to be considered, or weighed, in relation to the "results obtained" in determining a reasonable fee amount in a bankruptcy case. Nor do the cases cited by the district court's opinion on this subject, *Boddy* and *Harman*, give any explanation of this. Rather, they do not discuss it at all.

## 2. The *Boddy*, *Harman*, *Barber*, and *Johnson* cases

In *Boddy*, the Sixth Circuit cited footnote 1 from the Fourth Circuit's decision in *Harman* with approval, and thereby indicated the Sixth Circuit's approval of the twelve factors listed in footnote 1 of the *Harman* court's opinion, as factors that the bankruptcy court may, in its discretion, consider in determining a reasonable fee. *See In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). One of those twelve discretionary factors listed in footnote 1 of *Harman* is "the amount in controversy and the results obtained." *Harman v. Levin*, 772 F.2d 1150, 1152 n.1 (4th Cir. 1985). But in *Boddy*, the Sixth Circuit expressly approved the bankruptcy courts' consideration of the "results obtained" without expressly mentioning "the amount in controversy," and never discussed how "the amount in controversy" is to be considered or weighed in a bankruptcy case. Rather, in

---

[12] *Id.* at 4-5 (citations omitted).

[13] *Id.* at 6.

17

the relevant passage, the *Boddy* court listed only "the results obtained," and not "the amount in controversy:"

> **The bankruptcy court also may exercise its discretion to consider other factors such as** the novelty and difficulty of the issues, the special skills of counsel, **the results obtained**, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area. *See Harman*, 772 F.2d at 1152 n. 1 (citing twelve factors bankruptcy courts may consider).

*Boddy*, 950 F.2d at 338 (emphasis added). The district court did the same thing, in its 2019 First Remand Order on Silverman & Morris's first appeal in this case, when it quoted from the same *Boddy* passage quoted above.[14] And the district court's First Remand Order did not mention or discuss the "amount in controversy" factor. This is why this Court, on the last remand, likewise did not discuss the "amount in controversy," but instead focused on the "results obtained."

Nevertheless, the district court found error on the part of this Court. This Court must comply with the district court's most recent mandate, and so must consider "the amount in controversy" along with "the results obtained."

In doing so, it is well to remember that the Fourth Circuit's list of the twelve factors in *Harman*, including the eighth numbered factor, "the amount in controversy and the results obtained," is ultimately derived from case law applying fee-shifting statutes in civil rights cases.

---

[14] In its 2019 First Remand Order, the district court stated:

> Once the bankruptcy court calculates the lodestar, it "**may exercise its discretion to consider other factors such as** the novelty and difficulty of the issues, the special skills of counsel, **the results obtained,** and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." [*Boddy*, 950 F.2d at] 338.

First Remand Order (Docket # 73) at 2 (emphasis added).

18

*Harman* relied on another Fourth Circuit case, *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), which cited the twelve "*Johnson* factors," based upon the decision in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), *abrogated in part by Blanchard v. Bergeron*, 489 U.S. 87 (1989)), widely used to determine the reasonableness of attorney fees in civil rights cases.

The *Barber* case, cited by *Harman*, was an action under the federal Truth in Lending Act (the "TILA"), which has a fee-shifting statute, 15 U.S.C. § 1640(a)(3), under which a successful plaintiff may recover, "in addition to damages, the costs of the action, together with a reasonable attorney's fee as determined by the court." *Barber*, 577 F.2d at 226. In *Barber*, the Fourth Circuit adopted the twelve *Johnson* factors for use in determining the amount of a reasonable attorney fee under the TILA. *Id.* While the *Barber* court listed the twelve *Johnson* factors, it did not discuss any of them. *Id.*

*Johnson* itself was an employment discrimination case under Title VII, which applied Title VII's fee-shifting statute, 42 U.S.C. § 2000e-5(k). That statute permits the court to "allow the prevailing party . . . a reasonable attorney's fee as part of the cost of the litigation." *Johnson*, 488 F.2d at 716. In *Johnson*, the Fifth Circuit adopted the twelve factors as "guidelines." *Id.* at 717. But like *Harman* and *Barber*, the *Johnson* case is of no help in assessing how the "amount in controversy" and the "results obtained" relate to each other. In fact, in its brief discussion of this factor, *Johnson* appears to address only the "results obtained," and not the "amount in controversy:"

> 8) *The amount involved and the results obtained*. Title VII, 42 U.S.C.A. § 2000e-5(g), permits the recovery of damages in addition to injunctive relief. Although the Court should consider the amount of damages, or back pay awarded, that consideration should not

19

> obviate court scrutiny of the decision's effect on the law.  If the
> decision corrects across-the-board discrimination affecting a large
> class of an employer's employees, the attorney's fee award should
> reflect the relief granted.

*Johnson*, 488 F.2d at 718.  In this passage, *Johnson* included Title VII injunctive relief in the

"results obtained" factor to be considered, in addition to the amount of monetary relief.

### 3.  Ways in which fee awards in bankruptcy cases are different

There are at least two important differences between fee awards made in a Chapter 7

bankruptcy case like this one, and fee awards in cases under non-bankruptcy fee-shifting statutes,

like *Johnson* and *Barber*.  First, in the non-bankruptcy cases, a prevailing plaintiff may obtain

injunctive relief that is a major part of the "results obtained," whereas that is normally not the case

in a Chapter 7 bankruptcy case.  In the bankruptcy case, the results obtained by counsel for the

Chapter 7 trustee normally consist of the amount of money obtained for the bankruptcy estate, but

not any sort of injunctive relief.

A second difference is that in the non-bankruptcy fee-shifting cases, the attorney fees

awarded are paid by the opposing party, and are *in addition to* any other monetary relief, such as

back pay or damages, that are awarded against that party.  None of the attorney fee award is paid

for by the prevailing attorney's own client, out of the damage award obtained by the attorney.  In

contrast, in the bankruptcy case, the fees awarded to a Chapter 7 trustee's counsel are paid from

the bankruptcy estate, and they reduce the amount of funds that are available for distribution to

creditors, dollar for dollar.  So the higher the fee award, the less the creditors will receive.  The

parties who are, in effect, the clients of the Chapter 7 trustee and the trustee's counsel — the

creditors — pay the full amount of the attorney fee award out of their own pockets.

20

These differences, especially the second difference, suggest that in a Chapter 7 bankruptcy case, a comparison of the fees requested (basically the lodestar amount) with the monetary "results obtained" is more important, and should be given greater weight, than a comparison of the "amount in controversy" with the monetary "results obtained." This may be why the Sixth Circuit in *Boddy*, quoted above, expressly referred only to the "results obtained," and not also the "amount in controversy."

In its Opinion After First Remand, quoted at length in Part II.C of this Opinion, this Court explained how its fee determination was greatly influenced by the first comparison just described — the fee amount requested (basically, the lodestar amount) versus the monetary results obtained. Based on that comparison, this Court concluded, in its discretion, that the Silverman & Morris lodestar fee amount should be reduced to $17,079.77 plus expenses.

**4. Consideration of the "amount in controversy" versus the "results obtained"**

But now that the Court considers the "results obtained" in comparison to the "amount in controversy," as the district court has mandated, the Court still concludes, in its discretion, that the Silverman & Morris lodestar fee amount should be substantially reduced.

**a. *Hensley v. Eckerhart* and *Farrar v. Hobby***

To begin with, the Court considers two United States Supreme Court cases on this subject, neither of which was a bankruptcy case. First, *Hensley v. Eckerhart*, 461 U.S. 424 (1983), was a civil rights case applying the attorney fee provision of 42 U.S.C. § 1988. In that case, the Supreme Court discussed "the important factor of the 'results obtained'" in determining the amount of a reasonable attorney fee. 461 U.S. at 434. In so doing, the Court cited the twelve *Johnson* factors with approval, *id.* at 434 n.9, and observed that the *Johnson* factor, "the amount

involved and the results obtained," "indicates that the level of a plaintiff's success is relevant to

the amount of fees to be awarded." *Id.* at 430. The Court stressed the importance of the

prevailing plaintiff's "level of success" and "degree of success." The Court stated:

> The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, **including the important factor of the "results obtained."** This factor is particularly crucial where a plaintiff is deemed "prevailing" even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? **Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?**

*Id.* (emphasis added). The Court further stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . .
>
> **If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.** This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . **Again, the most critical factor is the degree of success obtained.**

*Id.* at 435-36 (emphasis added). The Court further stated:

> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, **or it may simply reduce the award to account for the limited success**. The court necessarily has discretion in making this equitable judgment. . . . .

*Id.* at 436-37 (emphasis added). Finally, the Supreme Court summarized its holding in this way:

> We hold that **the extent of a plaintiff's success is a crucial factor** in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the

> hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. **But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.**

*Id.* at 440 (emphasis added).

In another civil rights case applying 42 U.S.C. § 1988, *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court again discussed the importance of the degree of a prevailing plaintiff's success. In that case, the plaintiff brought claims against several defendants under 42 U.S.C. §§ 1983 and 1985. The plaintiff originally sought both injunctive relief and damages, but then dropped their claim for injunctive relief and went to trial seeking only damages, in the amount of $17 million. 506 U.S. at 106-07. The jury found against only one of the defendants on the civil rights claims, but found that there were no damages. After an appeal, the district court entered a judgment in favor of the plaintiff for nominal damages of $1.00, but awarded the plaintiff attorney fees of $280,000.00 and expenses of $27,932.00 plus interest. *See id.* at 107, 116 (O'Connor, J. concurring).

The Supreme Court held that "a plaintiff who wins nominal damages is a prevailing party under § 1988," but also held that the plaintiff should not have been awarded any fees under § 1988. *Id.* at 112, 115-16.

The Supreme Court held that in the case of a plaintiff seeking only damages, at least, the "primary consideration" in determining a reasonable fee under § 1988 is "the amount of damages awarded as compared to the amount sought." *Id.* at 114 (citation omitted). The Court explained:

23

Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Hensley, supra*, 461 U.S., at 436, 103 S.Ct., at 1941. *Accord, Marek v. Chesny*, 473 U.S. 1, 11, 105 S.Ct. 3012, 3017, 87 L.Ed.2d 1 (1985). In this case, petitioners received nominal damages instead of the $17 million in compensatory damages that they sought.. . . We have already observed that **if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."** *Hensley, supra*, 461 U.S., at 436, 103 S.Ct., at 1941. . . . **"Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought."** *Riverside v. Rivera*, 477 U.S. 561, 585, 106 S.Ct. 2686, 2700, 91 L.Ed.2d 466 (1986) (Powell, J., concurring in judgment). Such a comparison promotes the court's "central" responsibility to "make the assessment of what is a reasonable fee under the circumstances of the case." *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 (1989). Having considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, see *Hensley*, 461 U.S., at 430, n. 3, 103 S.Ct., at 1937–1938, n. 3, or multiplying "the number of hours reasonably expended . . . by a reasonable hourly rate," *id.*, at 433, 103 S.Ct., at 1939.

*Id.* at 114-15 (emphasis added). The Court further held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [citation omitted], the only reasonable fee is usually no fee at all." *Id.* at 115 (citation omitted).

**b. This case**

In this case, based on facts stated by Silverman & Morris in support of its fee application, the "amount in controversy" was over $1.6 million. And the "results obtained," according to

Silverman & Morris, and as verified by the Trustee's Final Report,[15] were a $38,000 settlement, plus collection of some accounts receivable totaling $2,710.87, for a total amount of funds obtained for the bankruptcy estate of $40,710.87. Mathematically, that means that the "results obtained" were no more than 2.5 % of the "amount in controversy."[16] This "level of success" or "degree of success," by Silverman & Morris, in the phrases used by the Supreme Court in *Hensley* and *Farrar*, was very low. This actually justifies a reduction of the lodestar fee amount down to an amount that is even below the $17,079.77 fee that this Court awarded to Silverman & Morris before their most recent appeal to the district court. But in its discretion, the Court will not award Silverman & Morris *less* in fees than it awarded before the most recent appeal.

The facts showing the "amount in controversy" come from the fee application and a brief that Silverman & Morris filed in this Court, in support of its fee application, as well as from a draft complaint that Silverman & Morris prepared but did not file against the named defendants.

In its fee application, Silverman & Morris described a number of claims that it investigated, chiefly directed against the Debtor's sole shareholder, Garry Turner. The fee application stated:

> [Silverman & Morris] concluded that the Trustee had a basis for several claims against Mr. Turner or other persons. . . . [Silverman & Morris] prepared a proposed adversary complaint. The complaint was not filed with the Court, but it was furnished to Mr. Turner's attorney in order to demonstrate the Trustee's causes of action and

---

[15] Docket # 45.

[16] $40,710.87 divided by $1.6 million equals .0254, or 2.54 %.

the Trustee's preparation for litigation to assert those causes of action.[17]

The Fee Application then described the potential claims in more detail.[18]

In a brief filed before the Court held a hearing on the Fee Application,[19] Silverman & Morris explained that it had "investigate[d] a series of transactions by which the Debtor was arguably stripped of its most valuable asset, specifically an option to purchase real property located in Ann Arbor, Michigan, while its income was used to pay most of the cost of acquiring the real property."[20] Silverman & Morris reiterated that "the target of the investigation" was the Debtor's owner, Garry Turner,[21] and described the potential claims against Mr. Turner as totaling at least $1,655,962:

> After conducting discovery, the Trustee and [Silverman & Morris] learned that Mr. Turner owed the Debtor money [in the amount of $69,962, according to the Debtor's records], had caused the Debtor to transfer (without receiving fair value) various assets (valued at approximately $60.000) to insiders, and had caused the Debtor make preferential transfers of approximately $26,000 (for the benefit of insiders). The Trustee and [Silverman & Morris] also discovered that the Debtor might be the true owner of real estate in Ann Arbor that was sold shortly after the petition was filed for $1.5 million.[22]

Silverman & Morris further stated:

---

[17] First and Final Application for Compensation for Special Counsel to the Trustee (Docket # 42, the "Fee Application") at 2.

[18] *Id.* at 2-5.

[19] Docket # 49.

[20] *Id.* at 1.

[21] *Id.*

[22] *Id.* at 5-6 (footnote omitted).

> After preparing a draft complaint and contacting Mr. Turner's counsel, [Silverman & Morris] investigated Mr. Turner's defenses, including the possible expiration of various statutes of limitations. The Trustee, in consultation with [Silverman & Morris], concluded that the defenses were probably insurmountable. [Silverman & Morris] negotiated a settlement with Mr. Turner, which provided for the payment of $38,000. This settlement was approved by the Court.[23]

After holding the hearing on the Fee Application, the Court ordered Silverman & Morris to file a copy of the draft complaint it had prepared but never filed against Mr. Turner, as a supplemental exhibit to the Fee Application.[24] The Court reviewed that draft complaint,[25] and considered all of Silverman & Morris's written and oral arguments, before ruling on the Fee Application.

The draft complaint listed as defendants Garry Turner and his wife, Denise Garden, and Village Apothecary Management, LLC ("Village Management," whose two members were defendants Turner and Garden), and contained nine numbered counts. Following is this Court's summary of the counts and their amounts:

• Count I: breach of contract against Garry Turner, for failure to repay a loan owed to the Debtor, for $69,962 plus interest.[26]

• Count II: disallowance of setoffs claimed by Garry Turner against the loan in Count I.[27]

---

[23] *Id.* at 6.

[24] Order Requiring Supplementation of Fee Applications (Docket # 50).

[25] The draft complaint is filed at Docket # 51 (the "Draft Complaint").

[26] Draft Complaint at ¶¶ 16, 42-46.

[27] *Id.* at ¶¶ 47-56.

• Count III: against Garry Turner, for damages for several breaches of fiduciary duty, for an unspecified total amount but possibly exceeding $1.5 million, plus interest.[28]

• Count IV: against Garry Turner, for usurpation of a corporate opportunity, for same damages as Count III.[29]

• Count V: against all defendants, for several instances of common law conversion, for same damages as Count III.[30]

• Count VI: against all defendants, for several instances of statutory conversion, for same damages as Count III, plus statutory treble damages, plus attorney fees and interest.[31]

• Count VII: against all defendants, for unjust enrichment, for same damages as Count III.[32]

• Count VIII: alter ego/substantive consolidation claim against Village Management, for same amount as Count III.[33]

• Count IX: claim for imposition of constructive trust against all defendants, for same amount as Count III.[34]

As it turned out, however, after Silverman & Morris did their work to investigate the claims, and prepared and presented its draft complaint to the attorney for Garry Turner, it was confronted by the defenses argued by Turner's counsel. After that, the Trustee and Silverman and Morris concluded that the claims actually were worth very little or nothing. As noted above, Silverman and Morris stated:

---

[28] *See id.* at ¶¶ 21 ($6,042.82), 23-41 (net proceeds from a sale of certain real property in the gross amount of $1.5 million, plus other damages), 57-62.

[29] *See id.* at ¶¶ 63-72.

[30] *See id.* at ¶¶ 73-82.

[31] *See id.* at ¶¶ 83-86.

[32] *See id.* at ¶¶ 87-91.

[33] *See id.* at ¶¶ 92-103.

[34] *See id.* at ¶¶ 104-08.

28

> After preparing a draft complaint and contacting Mr. Turner's counsel, [Silverman & Morris] investigated Mr. Turner's defenses, including the possible expiration of various statutes of limitations. **The Trustee, in consultation with [Silverman & Morris], concluded that the defenses were probably insurmountable.**[35]

At this point, Silverman & Morris negotiated, and the Trustee accepted, an offer to settle all the claims for $38,000.00. Then, in the Trustee's motion to approve the settlement, Silverman & Morris wrote that the Trustee had "concluded that there was a significant probability of a recovery of less than the settlement amount and only a small probability of a recovery significantly greater than the settlement amount."[36] After this Court approved the settlement, the bankruptcy estate received $38,000 for these claims.

As noted above, the "amount in controversy" was over $1.6 million, and the total "results obtained" in this case was $40,710.87, which is 2.5% of the amount in controversy — a very low "level of success."

There is an additional way of looking at the "amount in controversy" and the "results obtained" in this bankruptcy case. That is to view the "amount in controversy" as the total amount of allowed claims in this case, other than the administrative claims of the Trustee and its attorneys for fees and expenses. As this Court noted in its prior opinions, the Trustee's final report shows that the other creditors in this case have allowed priority claims totaling $2,096.82 and allowed non-priority, unsecured claims totaling $117,910.10.[37] If the total of those amounts ($120,006.92) is considered the "amount in controversy," then the appropriate measure of the

---

[35] Silverman & Morris Brief (Docket # 49) at 6 (emphasis added).

[36] Trustee's Motion for Approval of Settlement (Docket # 33) at 8 ¶ 21(A).

[37] *See* Trustee's Final Report (Docket # 45) at pdf p. 12.

"results obtained" to compare it to would be the total amount to be paid to those creditors, after payment of the allowed fees and expenses of the Trustee and his attorneys.

Measured in this way, the "results obtained" would be only $321.25, *if* the Court allows Silverman & Morris fees in the full lodestar amount, *i.e.*, in the amount of $36,889.25. In that event, the total of fees and expenses allowed and to be paid to the Trustee and the Trustee's attorneys would be $40,389.62.[38] That would be 99.2% of the total funds of the bankruptcy estate of $40,710.87, and it would leave only $321.25 for the other creditors. That "result obtained" would be only .27% of the "amount in controversy."[39] Measured in this way, the "level of success" is basically zero. This also justifies a reduction of the Silverman & Morris lodestar fee amount, down to an amount that is even below the $17,079.77 fee that this Court awarded to Silverman & Morris before their most recent appeal. But again, in its discretion, the Court will not award Silverman & Morris *less* in fees than it awarded before the most recent appeal.

Whether the Court compares the "results obtained" with the lodestar fee amount in this case, or compares the "amount in controversy" with the "results obtained," the Court comes to the same conclusion. Whichever way the Court considers the "results obtained" factor referred to by the Sixth Circuit in *Boddy*, the Silverman & Morris lodestar fee amount is unreasonably high. This Court is convinced that it may and should, in its discretion, reduce that fee amount to

---

[38] This sum consists of the fees and expenses previously allowed for the Trustee and the Trustee's law firm, which total $3,325.63 (which fees reflect the already reduced fee amounts the Court previously ordered (*see* Docket ## 56, 57), and which were not appealed by the Trustee or his law firm, plus the Silverman & Morris lodestar fee amount of $36,889.25 plus expenses of $174.74.

[39] $321.25 divided by $120,006.92 equals .00268, or .268%.

$17,079.77, plus expenses.  And given the discussion above, the Court views that fee amount as generous — if anything, too high.

In making this decision, the Court is not applying impermissible "hindsight analysis," something the district court has cautioned against.[40]  As the district court has recognized, the Sixth Circuit's decision in *Boddy* permits the Court to reduce the lodestar fee amount based on, among other things, the "results obtained," as *Boddy* put it, or based on "the amount in controversy and the results obtained" as the *Harman* court put it.  This results-related factor necessarily involves some degree of what one might call hindsight, but that much is permitted.  Otherwise, the results obtained could not be considered at all.

The Court further notes that its decision today is not inconsistent with the cases cited by Silverman & Morris, including the unpublished case of *Kemp, Klein, Umphrey, Endelman & May v. Veltri Metal Prods., Inc.* (*In re Veltri Metal Prods., Inc.*), 189 F. App'x 385 (6th Cir. 2006), and *In re McLean Wine, Co.*, *Inc.* 463 B.R. 838 (Bankr. E.D. Mich. 2011).  As required by *Veltri Metal*, this Court has considered *all* of the factors listed in 11 U.S.C. §§ 330(a)(3)(C) and 330(a)(4)(A)(ii).[41]  And the *McLean Wine* case recognized the bankruptcy court's need to consider "all relevant factors," and the court's discretionary authority to make a downward adjustment of attorney fees based on the "amounts involved and the results obtained."  *See McLean Wine*, 463 B.R. at 853.

---

[40]  *See* Second Remand Order (Docket # 87) at 6-7 (citations omitted).

[41]  Those provisions require consideration of "whether the [professional's] services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title," and require the court to disallow compensation for "services that were not reasonably likely to benefit the debtor's estate; or necessary to the administration of the case."

This Court reiterates, and its decision on this second remand is further supported by, all the reasoning and considerations this Court expressed in its two prior opinions in this case, described in Part II of this Opinion, *other than* the reasoning that the district court has found to be erroneous. In making its fee decision today, this Court has considered all of the factors set out in 11 U.S.C. § 330(a), all twelve of the factors adopted in *Harman* and in *Boddy*, and, of course, the Court has carefully considered everything stated by the district court in its two appeal decisions.

In the end, in the Court's view, it is important to determine Silverman & Morris's allowed fee amount in a way that "strikes a fair and appropriate balance between the need to pay the bankruptcy estate's professionals a reasonable fee for their work, while at the same time making sure that 'the creditors in this case may receive a fair and meaningful distribution on their allowed claims.'" *See* Opinion After First Remand, 608 B.R. at 677 (citation omitted). This Court's discretionary decision is to allow fees in the reduced amount stated above. As the district court has recognized, the bankruptcy court has "broad discretion in determining attorney fees."[42]

## B. The concept of "billing judgment"

The second error found by the district court in this Court's reasoning has to do with this Court's consideration of 11 U.S.C. § 330(a)(3)(F). That section requires the Court to consider "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title[.]" This factor is in addition to the other factors set forth in § 330(a)(3), such as "the time spent on such services," "the rates charged for such services," and "whether the services were performed within a reasonable amount of time . . . ." 11 U.S.C. §§ 330(a)(3)(A), 330(a)(3)(B), 330(a)(3)(D).

---

[42] Second Remand Order at 7 (citations omitted).

This Court's application of § 330(a)(3)(F), in the Court's Opinion After First Remand, is quoted at length in Part II.C of this Opinion. The district court explained this Court's error in this way:

> For the next factor, the bankruptcy court also abused its discretion. Under it, the bankruptcy court needed to determine "whether the fee '[was] commensurate with fees for similar professional services in non-bankruptcy cases.'" ECF 1, PgID 17. Although the factor was not made explicit in *Boddy*, it is a factor under 11 U.S.C. § 330(a)(3)(F). *See* ECF 1, PgID 20. But rather than focusing on fees for similar nonbankruptcy services, the bankruptcy court instead relied on the "general concept" of "billing judgment[.]" *Id.* at 20–21.

> The "billing judgment" standard, however, is distinct from the 11 U.S.C. § 330(a)(3)(F) analysis that focuses on "whether the fee was 'commensurate with fees for similar professional services in non-bankruptcy cases.'" As the Sixth Circuit explained, billing judgment requires that "[a]ttorneys who seek fees have an obligation 'to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended' on the case. *Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 552 (6th Cir. 2008) (internal citation omitted). So, although the bankruptcy court may *replace* the analysis of 11 U.S.C. § 330(a)(3)(F) with the separate "billing judgment" standard, the bankruptcy court may not improperly *weigh* the "billing judgment" standard.

> Here, the bankruptcy court improperly weighed the "billing judgment" standard because the bankruptcy court already concluded that Appellant had billed reasonable hours at reasonable rates. ECF 1, PgID 15–16. Any analysis under the "billing judgment" standard would have contradicted the bankruptcy court's earlier findings. Because the bankruptcy court improperly weighed the "billing judgment" standard, the bankruptcy court abused its discretion.[43]

Here the district court seems to have held, among other things, that (1) the concept of "billing judgment" is different from the standard under § 330(a)(3)(F); (2) the concept of "billing

---

[43] Second Remand Order (Docket # 87) at 5-6.

judgment" is relevant to, and part of, determining the lodestar fee amount (reasonable hours times reasonable hourly rate), and is not relevant to the standard under § 330(a)(3)(F).

Removing the words and label of "billing judgment," the point this Court was trying to make in applying § 330(a)(3)(F) is that "in the real world of law practice outside of bankruptcy," attorneys often agree to reduce their fees when the lodestar amount would leave their client with little or no benefit from the litigation. The Court viewed this reality to be part of "the customary compensation charged by comparably skilled practitioners in cases other than [bankruptcy] cases," within the meaning of § 330(a)(3)(F).[44]

This point can be made just as well without this Court mixing in the words or concept of "billing judgment." Consider this passage from this Court's Opinion After First Remand, edited to omit the words "billing judgment:"

> The Court reiterates and adopts again its discussion of this in its June 4, 2018 Opinion and Order:

>> [A]mong the factors explicitly set out in Section 330(a) to determine reasonableness, they include the factor in Section 330(a)(3)(F), . . . "whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title[.]"
>> . . .
>> . . . [T]hat provision include[s the concept] . . . that, in general, . . . in bankruptcy cases but also in nonbankruptcy cases when [lawyers] have a paying client . . . clients generally expect . . . when there's some . . . monetary result obtained for the client in the case, the client . . . does not expect to pay all of that result obtained or money obtained to their attorneys or professionals in professional fees for

---

[44] *See* Opinion After First Remand, 608 B.R. at 675-76.

obtaining that result and to no gain to the client. It [is], of course, common . . . in the nonbankruptcy litigation world for paying clients and their lawyers to negotiate reductions in the fees of the professional even though the professional did spend the time and had a reasonable hourly rate and did spend a reasonable amount of time that would yield on an hourly rate basis a higher fee than what they're actually paid. In any event, results obtained is a major factor . . . . Consideration of that as a major factor sometimes does result, in my view, in professionals in a Chapter 7 case, in particular, and trustees as well sometimes . . . receiving allowance of fees in amounts that are lower than what would be reflected by their normal hourly rate times the amount of time they reasonably spent . . . on the tasks that they performed in doing their work because the . . . actual results obtained as a result of the work were such that the fee requested is disproportionately high compared to the results obtained.[45]

As clarified and modified by the discussion and edited quotation above, this Court reiterates its point about § 330(a)(3)(F). And viewed in this way, this Court concludes that § 330(a)(3)(F) further supports the Court's discretionary reduction in Silverman & Morris's lodestar fee amount, to the extent discussed in Part III.A of this Opinion.

While this Court's interpretation of § 330(a)(3)(F) supports the Court's decision today, it is not necessary to this Court's decision. The discussion in Part III.A of this Opinion, about "the amount in controversy and the results obtained," is fully sufficient, standing alone, to justify this Court's decision on this latest remand. That is, the Court's decision today would be the same,

_____

[45]  Opinion After First Remand, 608 B.R. at 675-76 (footnote omitted) (bold emphasis omitted) (references to "billing judgment" omitted).

35

even if the Court did not view § 330(a)(3)(F) as further supporting a discretionary reduction in the

Silverman & Morris fees.

## IV. Conclusion

For the reasons stated in this Opinion, the Court will enter an order granting the fee

application of Silverman & Morris in part, and allowing fees for Silverman & Morris in the

reduced amount of $17,079.77, plus reimbursement of expenses in the amount of $174.74.

**Signed on April 16, 2021**



/s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**